UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANDREW RAKOWSKY,

Plaintiff,

-v- 1:15-CV-0169 (DNH/CFH)

JEH CHARLES JOHNSON, Secretary, U.S. Department of Homeland Security,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES: OF COUNSEL:

MAHON, BERGER LAW FIRM — LAWRENCE A. BERGER, ESQ.
Attorneys for the Plaintiff
21 Glen Street
Glen Cove, New York 11542

OFFICE OF THE UNITED STATES ATTORNEY — KAREN FOLSTER LESPERANCE, ESQ.
Attorneys for the Defendant
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207-2924
Syracuse, New York 13204

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Andrew Rakowsky ("Rakowsky" or "plaintiff") filed this action on September 2, 2014. In his complaint, plaintiff alleges that defendant Jeh Charles Johnson, Secretary of the United States Department of Homeland Security ("Johnson" or "defendant"): (a) discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, 29

U.S.C. § 621 *et seq*. (the "ADEA") and (b) retaliated against him for prior protected activity pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) ("Title VII"). See Complaint. Plaintiff seeks both compensatory and punitive damages against defendant. Presently under consideration is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) by defendant. The motion has been fully briefed and oral argument was held in Utica, New York on January 27, 2017.[1]

## II. FACTUAL BACKGROUND

The following facts, taken from the complaint and the parties' statements pursuant to Northern District of New York Civil Rule 7.1(3), are undisputed unless otherwise indicated. Consideration has been given to whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiff.

In 1986, Rakowsky became a Special Agent with the U.S. Customs Service and was promoted to Senior Special Agent in 1999. See Plaintiff's Rule 7.1 Statement ("Pl.'s Stat."), at ¶ 2. In 2004, plaintiff was transferred to Latham, New York in order to be the Homeland Security Investigation's ("HSI") representative at the New York State Intelligence Center ("NYSIC"), a "fusion center" for multiple law enforcement agencies. Plaintiff was the only HSI representative at NYSIC during the time that he worked there. Id. at ¶ 5. From 2009 until 2011, plaintiff's direct supervisor was Resident Agent in Charge ("RAC") Patrick Coultry, who was located in HSI's Albany office (the "RAC Albany Office"), a location approximately ten miles from the NYSIC. In

---

[1] Counsel for Rakowsky failed to appear for oral argument without notice to the Court. While such appearance would have to helpful to further understand plaintiff's positions, all facts will be viewed in the light most favorable to the nonmoving plaintiff.

May 2010, plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission (the "EEO") alleging that RAC Coultry discriminated against plaintiff on the basis of age and disability (the "2010 EEO Complaint"). Id. at ¶ 31.

In May 2011, Rakowsky began to report directly to Chief Intelligence Officer ("CIO") Mark LaMonte of HSIs Buffalo, New York based Field Intelligence Group. Such change in supervisor resulted from an integration guidance issued by the Executive Associate Director for HSI. Id. at ¶ 9. Plaintiff was given the opportunity to stay in his current position at NYSIC and report to CIO LaMonte or vacate the position and remain under the direction of the RAC Albany Office and report to RAC Coultry. Id. at ¶ 19. Plaintiff decided to stay in his NYSIC position. Id. at ¶ 21. Despite the change in supervision, plaintiff remained working at the NYSIC location. Additionally, the change in supervision had no effect on plaintiff's pay, benefits and job duties. Id. at ¶ 25.

At some point after May 2011, Rakowsky was removed from group emails sent to the employees of the RAC Albany office, resulting in plaintiff not receiving at least nine emails received by such group from June 2011 and April 2012. On September 22, 2011, Agent Dean DelNegro, a group supervisor at the RAC Albany office, sent an email to the operational agents in the RAC Albany office soliciting volunteers to assist the U.S. Secret Service with an upcoming dignitary protection detail. Id. at ¶¶ 34-5. Such email was not sent to plaintiff. Plaintiff subsequently learned of the email requesting volunteers on September 28, 2011 and that two younger agents had been selected for the assignment.

Additionally, sometime in September 2011, Rakowsky also learned that a younger, less experienced agent had been selected to serve as the acting Resident Agent in Charge of the RAC Albany office for a single day on September 12, 2011. Plaintiff was not informed of, or considered for, the acting RAC assignment.

On December 23, 2011, Rakowsky filed a second EEO complaint alleging that the September 2011 actions were the result of age discrimination and were taken in retaliation of his 2010 EEO Complaint (the "2011 EEO Complaint"). On June 12, 2013, a settlement conference was held concerning plaintiff's 2011 EEO Complaint. The parties resolved the complaint and signed a settlement agreement. The agreement contained a provision that permitted plaintiff a seven day period to revoke the agreement. By email dated June 14, 2013, plaintiff exercised that right.

On July 26, 2013, Rakowsky voluntarily retired from HSI.

## III. LEGAL STANDARDS

*a. Summary Judgment Standard.*

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. PRO. 56(c); Richardson v. Selky, 5 F.3d 616, 621 (2d Cir. 1993).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party opposing summary judgment "'may not rest upon the mere allegations or denials of [their] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities Svcs.Co., 391 U.S. 253, 288 (1968)). Those specific facts must be supported by "citing to particular parts of materials in the record." FED. R. CIV. PRO. 56(c)(1)(A). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

Although discrimination claims may involve questions of intent that are ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting McLee v. Chrysler Corp., 38 F. 3d 67, 68 (2d Cir. 1994)). "[T]rail courts should not treat discrimination differently from other ultimate questions of fact." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000). Accordingly, "even in a discrimination context", a plaintiff must offer "more than conclusory allegations" to survive a motion for summary judgment. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010).

*b. The ADEA Discrimination Standard.*

The ADEA protects persons who are 40 or over from discrimination by virtue of that person's age. See 29 U.S.C. § 623(a)(1). Courts use the triparite burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze intentional discrimination claims under the ADEA. See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). The plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. See Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). In the context of a discriminatory action, a plaintiff must show: "(1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action; and (4) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendants to articulate a legitimate, non-discriminatory reason for the challenged adverse

employment decision or action. See Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). This "burden is one of production, not persuasion . . . and involves no credibility assessment of the evidence." Pathare v. Klein, 2008 WL 4210471, at *4 (S.D.N.Y. Sept. 12, 2008) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). Once the defendant presents a legitimate, non-discriminatory reason, the burden returns to the plaintiff to demonstrate that "defendant's articulated reason for its decision is in fact a pretext for discrimination." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995). "The ultimate burden of persuading [the] trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the summary judgment context, this means plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for discharging [him] is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1225 (2d Cir. 1994).

*c. Prohibition on Retaliation.*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the EEO. See 42 U.S.C. § 2000e-3(a). The ADEA contains a similar provision. See 29 U.S.C. § 623(d). To establish a prima face case of retaliation, a plaintiff must demonstrate: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse


employment action." Wright v. City of Syracuse, 2015 WL 1727169, at *2 (2d Cir. April 16, 2015) (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)); see also Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). Retaliation claims are analyzed using the burden-shifting framework from *McDonnell Douglas* as well. See Gorzynski, 596 F.3d at 110.

Further, a plaintiff may establish a causal connection between the protected activity and the adverse employment action "either (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009) (citing Knight v. City of New York, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004)).

## IV. DISCUSSION.

In his complaint, Rakowsky alleges that he was the victim of discrimination and retaliation because: (1) he did not receive certain emails that were distributed to members of the RAC Albany office between June 2011 and April 2012; (2) he was not selected to assist the secret service on a protection detail in September 2011 and two younger agents were selected instead; (3) he was not selected for a one-day assignment as an acting supervisor in September 2011 and a younger agent was selected instead; and (4) during the EEO process, an ICE attorney "reneged" on a proposed settlement agreement.[2]

[2] The Complaint alleges that only the second and fourth claims were in retaliation of Rakowsky's 2010 EEO complaint. However, reading the complaint broadly, the Court will consider whether any of the alleged adverse employment actions were in retaliation of plaintiff's protected activity.

*a. Rakowsky Has Failed to Establish a Prima Facie Case of Discrimination.*

To establish a discrimination claim under the ADEA, Rakowsky must present evidence that an adverse employment action was taken against him by defendant. The actions complained of by plaintiff are not sufficient as a matter of law to constitute adverse employment actions in order to establish a prima facie case of discrimination.

The Second Circuit has made clear that an "adverse employment action is a materially adverse change in the terms and conditions of employment." Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008). A materially adverse change in an employee's working conditions must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Moccio v. Cornell Univ., 889 F. Supp. 2d 539 585 (S.D.N.Y. 2012) (quoting Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012)). Examples of actions that are "sufficiently disadvantageous" so as to be considered materially adverse include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . unique to a particular situation." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004). "[E]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." Cunningham v. New York State Dept. of Labor, 326 Fed. Appx. 617, 619 (2d Cir. 2009) (citing Galabya v. New York City Bd. of Educ., 202 F.3 636, 640 (2d Cir. 2000)).

In the first three claims of the complaint, Rakowsky alleges that he was denied opportunities as a result of the failure to include him on emails sent to the RAC Albany Office. In the first cause of action, plaintiff contends that from June 2011 until April 2012, he did not receive at least nine emails that were sent to the RAC Albany office staff. However, plaintiff

admits that many of these were "notification of simple things" such as social events and marriage and birth announcements unrelated to his job duties. See Declaration of Karen Folster Lesperance, Ex. B, at 76-77.

One of these emails, sent in September 2011, sought volunteers for a Secret Service protection detail and Rakowsky asserts that he was deprived of the opportunity to be considered for this assignment as a result of not receiving the relevant email. Further, plaintiff contends that he was not selected to be the acting Resident Agent in Charge of the Albany HSI office on a single day in September 2011 when coverage was needed.

The actions complained of by Rakowsky, individually or collectively, are not sufficient to establish an adverse employment action. "Actions that are 'trivial harms' - i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience' - are not materially adverse." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 571 (2d Cir. 2011) (quoting Burlington N. v. Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). "Changes in assignments or responsibilities that do not 'radically change' the nature of work are not typically adverse employment actions[.]" Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013). However, "a change in duties or job reassignment may be an adverse employment action, 'if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career.'" Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013) (quoting Galabya, 202 F.3d at 641).

Rakowsky has offered no evidence that he suffered any alteration in pay, benefits or job progression as a result of the complained of actions by defendant. Plaintiff was not disciplined nor denied any additional benefit or employment that he was entitled to. The alleged denial of

the ability to volunteer for short term assignments did not radically change the nature of plaintiff's work nor is it alleged to have setback plaintiff's career.

Rakowsky contends that the alleged actions caused him to be "humiliated, embarrassed, and marginalized in the presence of peers, family and his supervisors." Pl.'s Memo, at 8. However, subjective feelings of anxiety or embarrassment are insufficient to constitute an adverse employment action. See Negussey v. Syracuse Univ., 1997 WL 141679, at *10 (N.D.N.Y. Mar. 27, 1997) (S.J. Munson); Davis v. City Univ. of New York, 1996 WL 243256, at *8 (S.D.N.Y. May 9, 1996).

In his fourth cause of action, Rakowsky alleges that in June 2013, an Office of Principal Legal Advisor attorney intentionally impeded his ability to reach a resolution of his 2011 EEO Complaint by "reneging" on a proposed settlement agreement. See Complaint.

Although Rakowsky does not mention this claim at all in his submission papers, reviewing Rakowksy's deposition, it appears that in June 2013, the parties reached a written agreement to settle the pending 2011 EEO complaint, whereby plaintiff would be paid $25,000.00 and would agree to retire by September 1, 2013. See Deposition of Andrew Rakowsky, at 124-134. The agreement permitted plaintiff to revoke it within seven days, which he did. In his testimony, plaintiff stated that the basis for his fourth claim was that defendant requested that he retire as a condition to the EEO settlement.

However, such request, even if it was made would not constitute an adverse employment action or otherwise sufficiently state a claim under the ADEA. "[T]he mere act of offering an employee a settlement cannot render the offeree sufficiently aggrieved to enable the offeree to state a separate claim of employment discrimination" because settlement offers "do not adversely affect a term, condition, or privilege of employment[.]" Hill v. United States Parcel

Service, 2002 WL 368144, at *3 (Equal Employment Opportunity Commission Feb. 26, 2002). As such, defendant's request that Rakowsky retire as a condition of the EEO settlement is insufficient to support a claim for age discrimination.

Because Rakowsky has failed to identify that he suffered a materially adverse employment action, he has failed to establish a prima facie case of discrimination under the ADEA on any cause of action included in the complaint. Accordingly, defendant is entitled to summary judgment concerning plaintiff's discrimination claims.

*b. Defendant Has Established a Legitimate Non-Discriminatory Reason.*

Even if the actions complained of by Rakowsky were to be considered adverse employment actions for the purposes of the ADEA, defendant has established that it possessed a legitimate, non-discriminatory reason for its actions towards Rakowsky during the relevant time period. Defendant has presented admissible evidence that the removal of plaintiff from the email distributions from May 2011 onward resulted from the fact that plaintiff's chain of command was modified at such time and that he became a member of the Field Intelligence Group of HSI's Buffalo office, reporting to CIO LaMonte, and he did not report to the RAC Coultry or the RAC Albany office after May 2011.

Rakowsky disputes this characterization and notes that at the relevant times he was listed on the table of organization in connection with the RAC Albany office, his official government vehicle was assigned out of the RAC Albany office, his time and attendance records were maintained by such office and he was on the duty roster for the RAC Albany office.

However, defendant's burden to articulate a legitimate, non-discriminatory reason for the employment actions is "one of production, not persuasion . . . and involves no credibility assessment of the evidence." Pathare v. Klein, 2008 WL 4210471, at *4 (S.D.N.Y. Sept. 12,

2008) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). Defendant has presented admissible evidence that plaintiff's removal from the email distributions and the volunteer opportunities contained therein, resulted from a restructuring that came from new ICE guidance within the Department of Homeland Security. As a result, a reasonable juror could rationally find such reasons worthy of credence and a legitimate, non-discriminatory reason for defendant's actions. Thus, defendant has met its burden of production at step two of the McDonnell Douglas test.

*c. Rakowsky Has Failed to Establish a Lack of Pretext.*

Once the defendant presents a legitimate, non-discriminatory reason, the burden returns to the plaintiff to demonstrate that the defendant's articulated reason for its decision is in fact a pretext for discrimination. See Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). In the summary judgment context, this means plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for [taking adverse action him] is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1225 (2d Cir. 1994).

While Rakowsky has provided evidence that he was still linked in many ways to the RAC Albany office, both administratively and somewhat operationally, such evidence fails to demonstrate that the actions taken against him give rise to an inference of discriminatory intent on the basis of his age. Even viewing the evidence in the light most favorable to plaintiff, he has offered no evidence upon which a jury could reasonably find that the proffered reason provided by defendant was a pretext for age discrimination. As a result, plaintiff has failed to sustain his burden with regards to the third step of the McDonnell Douglas framework and defendant's

motion for summary judgment will be granted with regards to the discrimination claims.

d. *Rakowsky Has Failed to Establish a Prima Facie Case of Retaliation.*

Rakowsky alleges that the challenged actions were not only taken with a discriminatory intent in violation of the ADEA, but that they were also taken in retaliation for his 2010 EEO Complaint in violation of Title VII.

In order to establish a prima facie case of retaliation under either Title VII or the ADEA, Rakowsky must present evidence of an adverse employment action, which courts in the Second Circuit have found to be slightly different then an adverse employment action in the discrimination context. With a retaliation claim, whether a particular act is "'materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Cunningham v. New York State Dept. of Labor, 326 Fed. Appx. 617, 620 (2d Cir. 2009) (quoting Burlington N. v. Santa Fe Ry. Co. v. White, 548 U.S. 53, 71 (2006)). A retaliation plaintiff must present "evidence sufficient to create a genuine triable issue as to whether [the act] to which [plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." Kessler v. Westchester Cty. Dep't of Soc. Serv., 461 F.3d 199, 209 (2d Cir. 20006).

Upon review of Rakowsky's complaint and submissions, he has not presented evidence of a cognizable or actionable adverse employment action and therefore has not met his threshold burden of showing a prima facie retaliation claim. Plaintiff's removal from the email distribution list and the denial of his ability to volunteer for short term assignments would not, as a matter of law, dissuade a reasonable employee from complaining of unlawful discrimination. It is undisputed that plaintiff did not suffer any change in pay, benefits or job responsibilities during

the time in question and no disciplinary measures were taken against him. Even in the retaliation context, when considered individually or when considered as a whole, plaintiff has not shown an adverse employment action.

Further, Rakowsky has failed to produce evidence sufficient to demonstrate that his prior protected activity had a casual connection with the alleged adverse employment actions. A plaintiff can establish a causal connection between the protected activity and an adverse employment action either directly, by offering evidence of "retaliatory animus", or indirectly, by demonstrating that the protected activity was followed in close proximity by the adverse treatment. See Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2014).

Rakowsky has not show evidence of retaliatory animus from defendant nor has he shown that the alleged adverse actions took place close in time to his protected activity. In fact, the alleged acts took place over 16 months after the filing of his 2010 EEO Complaint in May 2010. See Perry v. NYSARC, Inc., 424 Fed. Appx. 23, 26 (2d Cir. 2011) ("[A]ction taken twenty months after the protected activity suggests, by itself, no causality at all."). Such passage of time is insufficient to establish a casual connection between the alleged retaliatory actions and plaintiff's protected activity. This is especially true when the legitimate, non-discriminatory reason proffered by defendant is substantially closer in temporal proximity to the actions then plaintiff's protected activity.

Therefore, defendant's motion for summary judgment regarding Rakowsky's retaliation claims will also be granted.

## IV. CONCLUSION

Rakowsky has failed to offer sufficient evidence that the alleged discriminatory and retaliatory acts constituted adverse employment actions or that such actions occurred under

circumstances giving rise to an inference of discriminatory intent to overcome the defendant's legitimate, non-discriminatory reason for taking such actions. As a result, defendant's motion for summary judgment will be granted and the complaint will be dismissed.

Therefore, it is ORDERED that:

(1) defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) is **GRANTED**; and

(2) the complaint is **DISMISSED**.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

United States District Judge

Dated: October 25, 2017
Utica, New York